UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

RHONE APPAREL, INC., a Foreign Profit Corporation
D/B/A RHONE

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant,
RHONE APPAREL, INC., a foreign profit corporation d/b/a RHONE (hereinafter referred to as
"RHONE"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is
codified in 42 U.S.C. §§12181-12189.

1)     This action is also brought pursuant to 28 C.F.R. Part 36.

2)     This Court has jurisdiction over this case based on federal question jurisdiction, as provided
in 28 U.S.C. §1331 and the provisions of the ADA.

3)     Furthermore, because this Court has jurisdiction over the ADA claim, the Court has
supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)     Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act
of 2008, 42 U.S.C. §12101 ("ADAAA").

5)     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a polo shirt.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)     Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)     Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)     Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, RHONE, is a foreign profit corporation authorized to do business and doing business in the State of Florida.

20)     Defendant, RHONE, is a company that sells men, and women clothing, shoes, underwear, and accessories. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "RHONE".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.rhone.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and

other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)     Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)     Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendant's products, plan his visits, and to compare products, services, prices, sales,

discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)     During the month of November 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)     Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

        **RHONE**   https://www.rhone.com

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 129.0.6668.60

Screen Reader: NVDA v. 2024.3.1

Video Recorder: OBS Studio 30.2.3

**Barriers**

- Missing Descriptions for Buttons and Images:

  Several buttons, such as "Learn More" and "Shop New Arrivals," and product images in swiper containers lack proper descriptions or alternative text. This omission prevents screen reader users from understanding the purpose of these elements, limiting their ability to navigate the site effectively.

- Incorrect Focus Management:

  Focus is assigned to hidden or non-visible elements in various sections, such as the "We Think You'd Like" and "Official Dress Shirts NBA" swiper containers, where hidden product cards receive focus instead of visible ones. Additionally, focus is inappropriately given to underlying page elements while modals (like the 20% off modal and Search Modal) are active, disrupting navigation flow for keyboard and screen reader users.

- Keyboard Accessibility Issues:

  The Main Navigation Block does not support keyboard navigation for expanding and interacting with sub-links. The "Show Password" button on the login form

also cannot be operated using the keyboard, creating obstacles for keyboard-only users who rely on these functions to navigate and interact with the site.

- Inconsistent Screen Reader Feedback:

  Screen readers fail to announce key user actions, such as confirming color selections in the Search Modal or product size selections in the Alpine Insulated Active Jacket product details. This absence of feedback leaves visually impaired users uncertain if their actions were successful.

- Form Error Announcements Missing:

  Forms, including the Checkout Delivery Form and Sign-In/Sign-Up forms, do not provide screen reader users with clear feedback about input errors, such as invalid email addresses or zip codes. This lack of error communication prevents users from making necessary corrections and completing the forms successfully.

- Inefficient Bypass Navigation:

  No mechanism is available to bypass sections like the footer and chat button areas, forcing keyboard users to manually navigate through repetitive content to return to the main content or the top of the page.

- Unlabeled Form Fields and Instructions:

  The Sign-Up Form lacks clear instructions for required fields, phone number formats, and password criteria, leaving users confused and prone to errors during form submission. The absence of proper labels further exacerbates navigation difficulties for screen reader users.

**Violation 1: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

While the 20% off modal is visible, focus is incorrectly assigned to elements underneath the modal. This breaks the expected interaction flow and confuses keyboard users, as they should only be interacting with elements within the modal.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EbhnuTxrwFdMnAAtSqT6xWABEK9zUX7R ZYZF0mNM4ZvFWg

**Violation 2: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

The "Learn More" and "Sign Up" buttons do not have proper descriptions or purposes communicated to screen readers. This leaves visually impaired users unable to understand the function of these buttons, resulting in navigational challenges.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EYHBFBmbtgVJpphf1wLraU8Bo9VcR50wT
wijImcFF8mz1g

### Violation 3: 1.3.2 Meaningful Sequence

When the sequence in which content is presented affects its meaning, a correct reading
sequence can be programmatically determined.

When navigating the Official Dress Shirts NBA Swiper Container, users are allowed to
navigate to product cards that are not visible, disrupting the logical sequence of the
content. This confuses users relying on assistive technology, as they encounter content
that is not visually available.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ec6_3AnEKt1Jqj0NQHU9ad4BgpNS8Ht2nA
mJiRcVRTqFwg

### Violation 4: 2.4.3 Focus Order

If a Web page can be navigated sequentially and the navigation sequences affect meaning
or operation, focusable components receive focus in an order that preserves meaning and
operability.

Focus is incorrectly given to hidden product cards instead of visible ones within the Official Dress Shirts NBA Swiper Container, making it difficult for users to interact with the correct content while navigating with a keyboard or screen reader.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVHIk0q-
CnlAg3YX05_kT5EBJliZII07Kj0oVMNNR2Om3Q

**Violation 5: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

The "Shop New Arrivals" button on The Alpine Collection Banner does not have a description or purpose provided to screen readers, making it inaccessible to users who rely on assistive technology.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUey7qbEtY5CiKwupPIhHk4BnXBOUSHH
YoShLrsH6iGtlw

**Violation 6: 1.1.1 Non-text Content**

All non-text content that is presented to the user has a text alternative that serves the equivalent purpose, except for the situations listed below. Controls, Input If non-text content is a control or accepts user input, then it has a name that describes its purpose. (Refer to Success Criterion 4.1.2 for additional requirements for controls and content that accepts user input.) Time-Based Media If non-text content is time-based media, then text alternatives at least provide descriptive identification of the non-text content. (Refer to Guideline 1.2 for additional requirements for media.) Test If non-text content is a test or exercise that would be invalid if presented in text, then text alternatives at least provide descriptive identification of the non-text content. Sensory If non-text content is primarily intended to create a specific sensory experience, then text alternatives at least provide descriptive identification of the non-text content. CAPTCHA If the purpose of non-text content is to confirm that content is being accessed by a person rather than a computer, then text alternatives that identify and describe the purpose of the non-text content are provided, and alternative forms of CAPTCHA using output modes for different types of sensory perception are provided to accommodate different disabilities. Decoration, Formatting, Invisible If non-text content is pure decoration, is used only for visual formatting, or is not presented to users, then it is implemented in a way that it can be ignored by assistive technology.

The screen reader cannot communicate infomration abou the product images being didplayed within the "We Think You'd Like" Swiper Container.

Applicable WCAG 2.1 Standard at Issue: 1.1.1 Non-text Content (Level A)

URL Where Issue Was Encountered

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ed3Qk888uSlAuRInslDKC4EBOW8Xnhth-KiJ3sI561TEHw

**Violation 7: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

Users navigating the "We Think You'd Like" Swiper Container are allowed to interact with product cards that are not visible on the screen, leading to a confusing user experience for assistive technology users.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZyf0U064QlBpZ-KlCuJyRwBlBZOS3LqnRk4-AnjeNgdEA

**Violation 8: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus is incorrectly assigned to product cards that are not visible instead of the visible ones within the "We Think You'd Like" Swiper Container. This disrupts the navigation flow for keyboard users.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EbrlMC5vWd9OohEpxj8wy8QB-Q7xH-nepyJaiMn1keBxHQ

**Violation 9: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web pages

There is no mechanism provided to bypass the footer and chat button sections and return to the main content or top of the page. This results in inefficient navigation, especially for keyboard-only users.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcvatzJrbApPjMKM5U_k81kBvyYVHDbry1pz_kT-L5kTfg

**Violation 10: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

The Main Navigation Block does not allow users to expand and navigate the sub-links using the keyboard, limiting access to the site's content for keyboard-only users.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Eb88hCzivZFJuHPXXgTPin4BFo7KD47VnG ethR-xqq_q-A

**Violation 11: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

Users can navigate outside the Search Modal to elements hidden behind the modal, breaking the logical sequence and causing confusion for assistive technology users.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdtYZo8W3FRMm93--

ZWaM6UBhpL_W9BxZeefe5u_3FzXOg

**Violation 12: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

Focus is incorrectly given to elements on the underlying page while the Search Modal is visible, disrupting the expected focus order and leading to confusion for keyboard and screen reader users.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUkW-

KPRXc9EhcTNzr7MZCIBQiJD5Tenzq9IIRvU2dTxqQ

**Violation 13: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

16

There is no confirmation provided to the screen reader when a color button is pressed within the Search Modal, leaving users unsure if their action was successful.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EXudnsayi0tPmi6sy3mnO2oBJvvJu9ORPyBy i4Z6IS9K3w

**Violation 14: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not confirm the selection of a color option in the Men's State of Mind Shirt Slim Fit Product Details Block, preventing users from knowing whether their selection was applied.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/products/mens-state-of-mind-shirt-slim-fit/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdKcwGAaHqxCsTMsINuVKhABhq9sd8W9

OObFb4EtFLaUGA

**Violation 15: 1.3.1 Info and Relationships**

For all user interface components (including but not limited to: form elements, links and

components generated by scripts), the name and role can be programmatically

determined; states, properties, and values that can be set by the user can be

programmatically set; and notification of changes to these items is available to user

agents, including assistive technologies.

The names of refinement sections in the New Arrivals Filters Block are not

communicated to screen readers. As a result, users relying on screen readers cannot

identify what each filter button does or its purpose, making it difficult to apply the

appropriate filters. This hinders the ability to navigate and use the filtering system

effectively.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/collections/new-arrivals/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EYh1RRGOKENDmk7CO0S51eMBTTJGo7u

mq4WpcjOkpsYU8Q

**Violation 16: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

When navigating through the New Arrivals Filters Block, focus skips the first three refinement sections: Gender, Category, and Type. This causes disorientation for keyboard and screen reader users.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/collections/new-arrivals/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ERq2FCah71BOp-tzl2lNtxMB8V1_-E0hwPlDSHeqr9DWrQ


**Violation 17: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not properly communicate when a size button is selected in the Alpine Insulated Active Jacket Product Details Block, leaving users unaware of their selection.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/products/mens-alpine-insulated-active-

jacket/?variant=43787346739392

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EeveDcBZAtBMtP6xgsTYFFwBAuC-

SLPb4nvfFoXtFfjkfA


**Violation 18: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and

components generated by scripts), the name and role can be programmatically

determined; states, properties, and values that can be set by the user can be

programmatically set; and notification of changes to these items is available to user

agents, including assistive technologies.

The Delete Button, Increase Quantity Button, and Checkout Button within the Shopping

Cart Modal are not described to the screen reader, leaving visually impaired users

unaware of their purpose.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.rhone.com/products/mens-alpine-insulated-active-

jacket/?variant=43787346739392

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EW1SOfmMGBJItkEpzdiSa3MBM9yRQAdp

o8Xz93l2ajMCsw

**Violation 19: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

There is no error message to inform the user that an invalid Address and City values were entered. In addition, the Screen Reader does not inform the user of the invalid value entered in the Zip Code field.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://checkout.rhone.com/checkouts/cn/Z2NwLXVzLWVhc3QxOjAxSkFEU0s2R0hZ

NjgxUFdUUNURZNDEwOTVE

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EbAGKdxmbAJGoRcmcja09sABogUAVPYi3

hX7R_HC_qFV7A


**Violation 20: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

The names and purposes of the required fields in the Register Sign-Up Form are not communicated to screen reader users, leaving them unaware of what information is needed to complete the form.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://checkout.rhone.com/account/register

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ET3HRzJhNhhEoIk8LtLyLq8BDGFMNxqPlx

8-kXkHyx5lwg

### Violation 21: 2.1.1 Keyboard

All functionality of the content is operable through a keyboard interface without requiring

specific timings for individual keystrokes, except where the underlying function requires

input that depends on the path of the user's movement and not just the endpoints.

The "Show Password" button cannot be navigated to or operated using the keyboard,

hindering users from revealing their password.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://checkout.rhone.com/account/register

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZoJ5bfzrN1MgLmFadbaVnEB99SfEnm16t

Mdd2Rd8kmvLQ

### Violation 22: 3.3.2 Labels or Instructions

Labels or instructions are provided when content requires user input.

The password requirements are not provided to the screen reader, leaving users unsure of

the necessary criteria for creating a valid password.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://checkout.rhone.com/account/register

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVsLCr3U7JZAuBH7WNyniMUB6aC2S68R

mln7DxzEj7v7tA


**Violation 23: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the

error is described to the user in text.

The screen reader does not provide feedback about invalid email addresses with

whitespace characters or invalid passwords in the Sign-Up form, resulting in failed form

submissions without user awareness.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://checkout.rhone.com/account/register

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZcPmdqmByVEuVScYAb_AG8BXI7XPI_5

qpZ1-qElmVEjWg


**Violation 24: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the

error is described to the user in text.

The screen reader fails to inform users of an invalid whitespace character in the email field during sign-in, leading to failed login attempts without proper feedback.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://checkout.rhone.com/account/login?checkout_url=%2Fcheckouts%2Fcn%2FZ2Nw LXVzLWVhc3QxOjAxSkFEU0s2R0hZNjgxUFdUNURZNDEwOTVE%3Fcompany_lo cation_id%26locale%3Den-US

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETD7cL_BEgFLkXxzGeVNWzUBBbfM_LsG8 aT4wPMOdMY2IxQ

30)     Although the Website appeared to have an "accessibility" statement displayed and an "accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested, still could not be effectively accessed by, and continued to be a barrier to, blind and visually disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted to access the statement, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the

Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant, due to his severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44)     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)    Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)    Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)    The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)    Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)    Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)    Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.


**COUNT I – VIOLATION OF THE ADA**

54)    Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)    Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)    Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations,

purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57) Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58) Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59) In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of

the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in November and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with

disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)     There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed,  28  C.F.R.§36.303(b)(2)

specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)    As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)    As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)    Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

i.      Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.     Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.    Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)     WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.      A declaration that Defendant's website is in violation of the ADA;

b.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1]would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

---



[1]

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42

U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and

further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)     Defendant's website contains software analytics. Since Plaintiff has navigated

Defendant's website as stated herein, Plaintiff's computer and the personal information and

browsing history stored therein, has suffered a trespass by Defendant.

76)     Plaintiff never consented to and was unaware that Defendant's website was placing

software on his computer.

77)     The "pop-up" or banner notice that appears on Defendant's website does not properly

audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can

properly understand or give informed consent to allow tracking cookies to be placed on his

computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff

because Plaintiff did not consent to the placement of tracking and information securing software

on his personal computer, which was done without his knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his

computer.

80)     On its website, Defendant has an internet privacy policy section that can only be accessed

by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing

that they use cookies and similar technologies to collect a consumer's information and they obtain

non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

Browser Cookies

We use cookies to create a better experience for you on our site. For example, cookies prevent you from having to login repeatedly, and they help us remember items you've added to your cart. We also use third-party cookies, which are cookies placed by third parties for advertising and analytics purposes. You can control these cookies through your browser settings.

Information from other sources

We may collect personal information about you from third-party sources, including Ad Networks, Other consumers (e.g., referrals), and Social Networks.

The categories of information we may collect include:

Ad Networks

Personal Identifiers, including Email address and Online Identifiers

Internet Activity

Other consumers (e.g., referrals)

Personal Identifiers, including Name and Email address

Social Networks

Personal Identifiers, including Email address and Online Identifiers

Internet Activity

How long we keep your data

36

We do not retain data for any longer than is necessary for the purposes described in this Policy.

We generally retain data according to the guidelines below.

| Type of Data | Retention Period |
|---|---|
| Cookies and online data we collect while you use our website, including Name, Email address, Postal address, Telephone number, Online Identifiers, Internet Activity, Credit or debit card number | We delete or anonymize data concerning your use of our website within 10 years of collecting it. |
| Data we collect in order to process and ship orders you place with us, including Name, Email address, Postal address, Telephone number, Purchases | We keep personal information related to products and services you purchase for as long as the personal data is required for us to fulfill our contract with you, and for 10 years from your last purchase with us. We may keep data beyond this period in anonymized form. |
| Data we collect when you contact us for customer support and other inquiries, including Name, Email address | We keep customer feedback and correspondence with our customer service for up to 2 years to help us respond to any questions or complaints. We may keep data beyond this period in anonymized form. |

| Type of Data | Retention Period |
|---|---|
| Data we collect when you sign up for promotional and marketing communications, including Email address, Online Identifiers | Where you have signed up to receive promotional and marketing communications from us, we will retain any data collected until you opt out or request its deletion. We may keep data beyond this period in anonymized form. We will further retain a record of any opt-outs in order to prevent sending you future communications. |
| Data we collect when you review our products, answer surveys, or send feedback, including Name, Email address, Purchases, Precise geolocation | We retain review, survey, and feedback data for up to 10 years following your last contact with us. We may keep data beyond this period in anonymized form to help improve our products and services. |
| Data we collect in connection with privacy requests, including Name, Email address, Postal address, Telephone number, Online Identifiers, Internet Activity, Precise geolocation | We retain records related to privacy requests for a minimum of 24 months following the completion of the request. |

81)    Due to Plaintiff's disability, he could not understand Defendant's website and he could not

give informed consent to Defendant's installation of data and information tracking software on his

computer. Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)    Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.


WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.


Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434